# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| INTEGRAMED AMERICA, INC., a Delaware corporation, ) ) ) ) Plaintiff, ) ) v. ) ) GRANT W. PATTON, JR.; ) SOUTHEASTERN FERTILITY CENTER, ) P.A., a South Carolina Professional ) Association; and SOUTHEASTERN ) FERTILITY CENTER, P.A. A/K/A OR ) F/K/A SOUTHEASTERN FERTILITY ) CENTER II, P.A., a South Carolina ) Professional Association, ) ) Defendants. ) _____) GRANT W. PATTON, JR.; ) SOUTHEASTERN FERTILITY ) CENTER P.A., a South Carolina ) Professional Association; and ) SOUTHEASTERN FERTILITY ) CENTER, P.A. A/K/A OR F/K/A ) SOUTHEASTERN FERTILITY CENTER ) II, P.A., a South Carolina Professional ) Association, ) ) Third-Party Plaintiffs, ) ) v. ) ) JOHN A. SCHNORR, M.D., ) ) Third-Party Defendant. ) _____) | CIVIL ACTION NO.: 2:12-cv-03566-PMD  **ORDER** |

This matter is before the Court on Plaintiff IntegraMed America, Inc.'s ("IntegraMed") Motion for Summary Judgment (ECF No. 53) ("Motion") pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth herein, IntegraMed's Motion is granted.

## JURISDICTION

The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 (2006). "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." *Id.* § 1332(a), (a)(1). Plaintiff is a foreign corporation organized under the laws of the State of Delaware with its principal place of business in New York. Defendant Grant W. Patton, Jr. ("Dr. Patton") is a citizen and resident of the State of South Carolina. Defendant Southeastern Fertility Center P.A. ("SEFC") is a now dissolved professional association which was organized under the laws of the State of South Carolina and had its principal place of business in the same. Defendant Southeastern Fertility Center, P.A. a/k/a or f/k/a Southeastern Fertility Center II, P.A., ("SEFC II") is a professional association organized under the laws of the State of South Carolina with its principal place of business in the same. The amount in controversy exceeds the jurisdictional prerequisite. Therefore, the Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

## BACKGROUND

Dr. Patton was the founder and President of SEFC, a medical facility specializing in reproductive endocrinology and infertility treatment services. Dr. John Schnorr ("Dr. Schnorr") initially joined SEFC as a non-shareholder physician employee but by 2004 he and Dr. Patton were essentially equal shareholders and Dr. Schnorr had become Vice President of SEFC. SEFC was located in Mt. Pleasant, South Carolina in a building jointly owned by Drs. Patton and

2

Schnorr. In 2008, SEFC entered into a Business Services Agreement ("BSA") with IntegraMed, a Delaware corporation in the business of making available to medical providers certain assets and support services. Under the terms of the BSA, SEFC granted to IntegraMed the exclusive right to provide certain business services—labs, facilities, equipment, staff, supplies, and monies—to SEFC. Drs. Patton and Schnorr also entered into a Personal Responsibility Agreement with IntegraMed, under which the doctors agreed to use their best efforts to ensure SEFC's compliance with the BSA. In consideration for SEFC's exclusive contract with it, IntegraMed paid $950,000 to SEFC to purchase all of its equipment and assets and paid $450,000 each to Dr. Patton and Dr. Schnorr. Thereafter, IntegraMed hired employees and assumed accounting, insurance processing, financial, and management services for SEFC. However, Drs. Patton and Schnorr remained shareholders and employees solely of SEFC pursuant to SEFC's preexisting operating/shareholder agreements.

In 2010, a conflict developed between the doctors. In August 2010, Dr. Patton performed a surgical procedure at East Cooper Medical Center (the "Hospital") that allegedly involved an adverse event. On or around September 7, 2010, Dr. Schnorr submitted a letter concerning the surgical procedure to the Hospital peer review committee. The committee initiated a peer review of the procedure. As part of a consent agreement with the Hospital, Dr. Patton voluntarily relinquished his surgical privileges in October 2010. Around this same time, Dr. Schnorr, in his capacity as SEFC's Medical Director, sent a letter to the American Association for Accreditation of Ambulatory Surgical Facilities ("Quad A"), a surgical accreditation group. In the Quad A letter, Dr. Schnorr inquired as to whether Dr. Patton could continue to perform in-office surgeries at SEFC (a Quad A accredited facility) since he no longer retained Hospital surgical privileges.

The already tense situation between the doctors quickly escalated. On October 29, 2010, Dr. Schnorr called an SEFC board meeting for the purpose of terminating Dr. Patton from SEFC because Dr. Schnorr believed Dr. Patton's surrender of Hospital surgical privileges was in breach of the SEFC operating/shareholder agreements. Dr. Schnorr presented the meeting notice to SEFC's Executive Director, Mr. Philip Waters ("Mr. Waters"), for his signature.[1] Mr. Waters signed the notice as "Practice Administrator" of SEFC and an "ex-officio member of the board of directors" of SEFC. Dr. Patton issued a competing meeting notice several days later for the purpose of terminating Dr. Schnorr, but neither meeting took place because neither doctor held the supermajority shareholder interest required to terminate the other under the terms of the SEFC shareholder/operating agreement.

In February 2011, Drs. Patton and Schnorr unsuccessfully attempted mediation and entered into a formal standstill and tolling agreement. By this time, IntegraMed had learned that Dr. Patton had resigned his Hospital surgical privileges in connection with a peer review proceeding and that Dr. Schnorr had concerns about Dr. Patton's ability to continue practicing. In March 2011, IntegraMed's Director of Risk Management, Lee di Uglio ("Ms. di Uglio"), visited SEFC to learn more about the situation. After interviewing the doctors and staff, Ms. di Uglio issued an internal clinical risk assessment report identifying concerns she had with Dr. Patton's capabilities. IntegraMed shared its concerns with the doctors and requested assurances concerning Dr. Patton's abilities, including floating the possibility that Dr. Patton undergo an independent medical evaluation. Dr. Patton did not provide a substantive response.

---

1.     Mr. Waters was SEFC's long-time Practice Administrator, whose relationship with SEFC predated IntegraMed's (and Dr. Schnorr's) arrival by several decades. Dr. Patton and Dr. Schnorr appointed Mr. Waters as a non-voting ex-officio member of SEFC's board of directors pursuant to SEFC's operating agreement. In 2008, Mr. Waters became an employee of IntegraMed and assumed the role of Executive Director as specified in the BSA.

4

Subsequently, Dr. Patton and Dr. Schnorr were involved in litigation in the South Carolina Court of Common Pleas and in an arbitration proceeding regarding the ownership and governance of SEFC and the medical offices formerly occupied by SEFC. The arbitration panel ordered the dissolution of SEFC in March 2012,[2] and the doctors started independent practices.[3] Following the arbitration panel's order, IntegraMed sent Defendants a notice of default and breach of contract letter dated April 13, 2012. According to IntegraMed, the dissolution of SEFC constitutes an act of default and a material breach by Defendants of the BSA, which obligates SEFC to remain legally organized, solvent, and operating to provide infertility services. The letter also advised Defendants that IntegraMed was considering petitioning the then Patton-Schnorr three-member arbitration panel to address the issues and appoint a receiver. Dr. Patton's counsel informed IntegraMed that neither Dr. Patton nor the panel was receptive to IntegraMed being involved in that arbitration. On October 11, 2012, IntegraMed's counsel sent a demand letter to Defendants' counsel demanding payment of sums owed to it but received no answer. On December 5, 2012, Defendants and Dr. Schnorr entered into a Settlement Agreement and Mutual Release memorializing the settlement of their lengthy and complex dispute.

On December 18, 2012, IntegraMed filed this lawsuit against Defendants alleging the following causes of action: (1) breach of contract; (2) quantum meruit/unjust enrichment; (3) violation of the South Carolina Unfair Trade Practices Act; and (4) piercing the corporate veil/alter ego/successor liability as to SEFC II. IntegraMed had resolved its claims against Dr. Schnorr regarding his association with SEFC; therefore, he is not named in the Complaint. Defendants filed an Answer and brought the following counterclaims against IntegraMed: (1) conspiracy; (2) defamation – slander per se; (3) defamation – slander; and (4) abuse of process.

---

[2] The dissolution was ordered to take effect on May 7, 2012.
[3] SEFC II, Dr. Patton's current practice, is also a Defendant in this case.

Defendants also brought the following third-party claims against Dr. Schnorr: (1) conspiracy; (2) contractual and/or equitable indemnity; and (3) abuse of process.

Dr. Schnorr moved to compel arbitration of Defendants' third-party claims against him on February 1, 2013. Subsequently, Defendants and Dr. Schnorr agreed to a consent order referring Defendants' third-party claims against Dr. Schnorr to arbitration pursuant to agreements already in place between them from previous arbitration proceedings dating back to 2010. Defendants filed a Motion to Compel Arbitration of IntegraMed's claims and this Court granted the motion on April 24, 2013. On July 30, 2013, the Court entered a consent order wherein IntegraMed and Defendants agreed to have the case remain before this Court and be decided in a non-jury proceeding.

The case was reassigned to the undersigned United States District Judge on December 1, 2014. IntegraMed filed the instant Motion on March 20, 2014, and Defendants filed their Response on December 7, 2014. This matter is now ripe for consideration.

## **STANDARD OF REVIEW**

To grant a motion for summary judgment, the court must find that "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991). Summary judgment is not "a disfavored

procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual basis." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

## DISCUSSION

IntegraMed moves for summary judgment as to all counterclaims asserted in the Answer. For the reasons set forth below, the Court grants IntegraMed's Motion.

### I.     Conspiracy

Defendants allege that IntegraMed conspired with Dr. Schnorr to "damage Dr. Patton's career, business, and reputation in order to further their own interests." (Defs.' Resp. 22, ECF No. 82). According to Defendants, the object of the alleged Schnorr-IntegraMed conspiracy was to force Dr. Patton out of SEFC and prevent him from competing with Dr. Schnorr's new practice. As evidence of the alleged conspiracy, Defendants allege IntegraMed—through its employees—and Dr. Schnorr agreed and acted to harm Dr. Patton's reputation and interests by:

- initiating a Hospital peer review proceeding in connection with Dr. Patton's alleged adverse surgical event;

- advising Dr. Patton against voluntary relinquishment of his Hospital surgical privileges with the knowledge that involuntary termination of the privileges would put him in breach of his SEFC employment agreement;

- imperiling Dr. Patton's in-office surgical privileges by bringing his relinquishment of Hospital surgical privileges to the attention of Quad A;

- opening and reviewing sensitive mail addressed to Dr. Patton from the National Practitioner Data Bank ("NPDB");

- attempting to oust Dr. Patton from SEFC;

- reporting on the termination of Dr. Patton's Hospital surgical privileges in an internal IntegraMed report;

- manufacturing "incident reports" intended to show Dr. Patton's incompetence;

- filing suit to dissolve SEFC;

7

- stealing Dr. Patton's intellectual property after dissolution;

- filing a false complaint with the South Carolina Medical Licensing Board;

- demanding repayment of the entire $950,000 advance under the BSA from Dr. Patton alone; and

- filing the instant suit to deter another doctor from joining Dr. Patton's practice.

The Court will consider these allegations in turn.

In order to recover for civil conspiracy, a plaintiff must demonstrate that "two or more persons combined for the purpose of injuring and causing special damage" to him. *AJG Holdings LLC v. Dunn*, 708 S.E.2d 218, 222 (S.C. Ct. App. 2011). In order to establish a civil conspiracy, direct or circumstantial evidence must be present from which one may reasonably infer the participants' mutual assent to carrying out the unlawful enterprise. *Island Car Wash, Inc. v. Norris*, 358 S.E.2d 150, 153 (S.C. Ct. App. 1987). The term "unlawful" does not require a violation of the criminal laws, *Lee v. Chesterfield Gen. Hosp., Inc.*, 344 S.E.2d 379, 382 (S.C. Ct. App. 1986); lawful acts may become actionable as a civil conspiracy when the "object is to ruin or damage the business of another." *Charles v. Texas Co. (Charles II)*, 18 S.E.2d 719, 724 (S.C. 1942); *see also LaMotte v. Punch Line of Columbia, Inc.*, 370 S.E.2d 711, 713 (S.C. 1988). The crucial consideration in civil conspiracy is not whether lawful or unlawful acts are committed in service of the conspiracy, but whether the chief purpose is to injure the plaintiff. *Lee*, 344 S.E.2d at 383. Because the essence of a civil conspiracy claim is the damage suffered by the plaintiff, the damages alleged must exceed those damages alleged in other causes of action. *Pye v. Estate of Fox*, 633 S.E.2d 505, 511 (S.C. 2006).

Defendants first claim that Dr. Schnorr initiated the peer review process at the Hospital, which Dr. Schnorr denies, and that IntegraMed was somehow involved with a letter Dr. Schnorr

8

wrote to the Hospital peer review committee. However, months after the alleged adverse surgical incident, when IntegraMed sent an email to Mr. Waters requesting information regarding the situation, he replied that he had only minimal knowledge of the incident because Dr. Patton denied any responsibility and Dr. Schnorr declined to discuss his opinion of the case. The email and Mr. Waters' response support the depositions of Dr. Schnorr and Mr. Andrew Mintz, IntegraMed's fertility division president, who both testified that Dr. Schnorr did not inform anyone at IntegraMed about his letter to the peer review board. Despite a substantial cache of emails and other records produced in discovery, Defendants have offered no proof to contest IntegraMed's claim that it did not know of the existence of the letter until discovery began in this case. The same is true for Defendants' claim that IntegraMed was somehow involved in Dr. Schnorr's decision to advise Dr. Patton regarding whether to relinquish his Hospital surgical privileges and in sending the Quad A letter, which Dr. Patton viewed as an attack on his in-office surgical privileges and an attempt to oust him from the practice. Dr. Schnorr stated in his Deposition that he did not consult any IntegraMed employees, including Mr. Waters, before sending the Quad A letter. Neither did he copy any IntegraMed employees on the letter or advise them after the fact that he had sent it. Defendants have failed to offer any evidence refuting this. Defendants also make much of the fact that Mr. Waters opened a letter addressed to Dr. Patton from the NPDB, allegedly in breach of that organization's confidentiality rules. However, it is undisputed that Mr. Waters routinely opened Dr. Patton's mail per Dr. Patton's standing instructions. There is no evidence that Mr. Waters told anyone at IntegraMed, Dr. Schnorr, nor anyone outside SEFC about the letter, which IntegraMed claimed it first learned of during the discovery process in this case.

A central component of Defendants' conspiracy claim is Dr. Schnorr's attempt to eject Dr. Patton from SEFC by calling a meeting to discuss terminating him from the practice. In particular, Defendants point to the fact that Mr. Waters, an IntegraMed employee, co-signed the meeting notice. While Mr. Waters was employed by IntegraMed at the time, he was also the long-standing practice administrator of SEFC and an ex-officio member of the SEFC Board of Directors, positions he held for years prior to IntegraMed. The notice explicitly indicates he was signing under the auspices of those SEFC positions rather than as an employee of IntegraMed. Although Defendants resist this interpretation of Mr. Waters' position at SEFC, it is telling that the first item of business in Dr. Patton's competing meeting notice, issued just days later, was to remove Mr. Waters from his position as an ex-officio member of the SEFC Board. Regardless, Defendants do not dispute that Mr. Waters never had voting rights and that the notice was therefore ineffective.

Defendants' claims that IntegraMed's 2010 President's Report[4] and 2011 risk assessment constitute evidence of the conspiracy are similarly flawed. By that point, IntegraMed was obviously aware of the tension between the doctors. Dr. Schnorr had expressed to IntegraMed that he had concerns about Dr. Patton's clinical skills and IntegraMed had been advised that Dr. Patton was involved in an adverse event about which he declined to provide any information.

---

4.     This report was prepared by IntegraMed's fertility division president, Mr. Mintz. The report summarizes the status of all of IntegraMed's fertility divisions nationwide. The portion referring to SEFC states:

> Southeastern [aka SEFC]
>
> Dr. Grant Patton has lost his privileges at East Cooper Medical Center. To that end, based on his employment agreement and accreditation standards, Dr. Patton should be terminated from employment. Dr. John Schnorr has taken steps to effectuate the termination, but Dr. Patton countered by attempting to terminate Dr. Schnorr.  Each has retained counsel and AFC [i.e. Integramed] is ascertaining the appropriate steps to take to avoid these actions from detracting from the operations and vitality of the practice.

(Defs.' Resp., Ex. V).

Collecting information about adverse incidents was a routine part of IntegraMed's business pursuant to its medical malpractice insurance claims-made requirements, and Defendants have not shown that Dr. Patton was targeted or singled out in any way.  Defendants have offered no evidence to rebut Plaintiff's explanation of these reports; namely, that IntegraMed became aware of the deteriorating situation between the two doctors and that the reports memorialize the steps it took to understand how the situation might affect its business partner and how it might best protect its investment in SEFC.  Furthermore, it is undisputed that IntegraMed had no authority to terminate Dr. Patton since he was not an IntegraMed employee.

With regard to the dissolution of SEFC ordered by the arbitration panel, it is unclear how IntegraMed could be conspiring with Dr. Schnorr to effect dissolution of the practice when IntegraMed was shut out of the arbitration proceedings.  Defendants' claims that IntegraMed somehow participated in a theft of Dr. Patton's intellectual property are similarly unfounded. While the ownership of SEFC's websites arose in the context of the Patton-Schnorr arbitration, Defendants have offered no evidence whatsoever that IntegraMed had any involvement in the wrangling over SEFC's websites.

Defendants' claims that IntegraMed was involved in a conspiracy when it offered to assist Dr. Schnorr in setting up his new practice similarly fail.  Though Defendants' fail to address it, the record reflects that IntegraMed made multiple offers or proposals for continuing its relationship with Dr. Patton, to which Patton never provided a meaningful reseponse. Although IntegraMed offered assistance to Dr. Schnorr in his attempt to buy out Patton's ownership interest in the SEFC building, it is undisputed that Dr. Schnorr rejected the offer. Furthermore, it is undisputed that IntegraMed had a significant financial stake in SEFC's

11

continued operations and profitability and there is no evidence that its purpose in offering assistance to Dr. Schnorr was to injure Dr. Patton rather than to protect its investment.

Finally, Defendants' allegation that IntegraMed filed the instant suit to prevent another physician from joining Dr. Patton's new practice has no factual support. The doctor in question, Dr. Singleton, testified that she declined Dr. Patton's offer because of a threatening email sent by Dr. Patton's attorney and her belief that Dr. Patton had not been honest with her about the IntegraMed lawsuit. Even if Defendants could show some improper motive on the part of IntegraMed, "an act done in the exercise of a legal right cannot be treated as wrongful and actionable merely because a malicious motive prompted the exercise of that right." *S. Contracting, Inc. v. H.C. Brown Constr. Co.*, 450 S.E.2d 602, 604 (S.C. Ct. App. 1994). The record includes substantial evidence that IntegraMed brought the underlying action in order to recover monies it claims it was owed as a result of the agreements between the parties.

Despite offering a litany of acts in support of the alleged Schnorr-IntegraMed conspiracy, Defendants have failed to provide any proof of IntegraMed's involvement, even tangentially, in the vast majority of the acts. Thus, Defendants lack the "combination" required to prove a conspiracy claim. They have failed to produce evidence that IntegraMed acted with the purpose of injuring Dr. Patton and his business. Defendants have failed to show that any material facts are in dispute, thus depriving this Court of any basis upon which to find in their favor.

## II. Defamation

Defendants allege that IntegraMed defamed Dr. Patton. The tort of defamation allows a plaintiff to recover for reputational harm incurred as the result of the defendant's communications to others of false information about the plaintiff. *Murray v. Holnam, Inc.*, 542 S.E.2d 743, 748 (S.C. Ct. App. 2001). Defamatory words are those that "convey to the minds of

12

those to whom they are addressed . . . the impression that the plaintiff has done wrong." *White v. Wilkerson*, 493 S.E.2d 345, 347 (S.C. 1997) (citing *Flowers v. Price*, 6 S.E.2d 750, 751 (S.C. 1940) (per curiam)). "To prevail on a cause of action for defamation pursuant to South Carolina law, a plaintiff must prove the existence of some message that: (1) is defamatory; (2) is published with actual or implied malice; (3) is false; (4) is published by defendant; (5) concerned the plaintiff; and (6) resulted in legally presumed or in special damages." *State Farm Fire and Cas. Co. v. Weaver*, 585 F. Supp. 2d 722, 730 (D.S.C. 2008).

Defendants offer the following as evidence that IntegraMed defamed Dr. Patton: (1) emails between IntegraMed employees discussing the rationale and results of IntegraMed's 2011 risk assessment report; (2) an August 24, 2012 IntegraMed employee email that refers to Dr. Patton as unreasonable; (3) statements contained in IntegraMed's President's Reports; and (4) a complaint IntegraMed allegedly made to the South Carolina Medical Board. IntegraMed argues that Defendants' defamation claim fails because the internal IntegraMed communications were never published and such communications are privileged.

Actionable defamation requires that the allegedly defamatory statement have been communicated to someone other than the plaintiff. *Tobias v. Sumter Tel. Co.*, 164 S.E. 446, 448 (S.C. 1932). However, a communication to a servant or business associate in the ordinary course of business is not actionable. *Watson v. Wannamaker*, 57 S.E.2d 477, 478 (S.C. 1950); *Rodgers v. Wise*, 7 S.E.2d 517, 519 (S.C. 1940). Furthermore, communications between officers and employees of a corporation are qualifiedly privileged if made in good faith and in the normal course of business. *Bosdell v. Dixie Stores Co.*, 167 S.E. 834, 837 (S.C. 1933). In order to overcome a defense of qualified privilege, the plaintiff has the burden of showing express malice

13

or malice in fact on the part of the defendant. *Conwell v. Spur Oil Co. of W. S. Carolina*, 125 S.E.2d 270, 276 (S.C. 1962).

Defendants have failed to show that the emails and reports referenced in support of their defamation claim are anything other than internal IntegraMed documents, seen only by IntegraMed officers and employees. In fact, when asked to identify any instances of IntegraMed revealing negative information to anyone in the community, Dr. Patton's response was "I haven't pursued this." (Patton Dep. 164:13). IntegraMed has offered evidence that the President's Report and the risk assessment report are regular, routine reports it generates about its physician partners in the normal course of its business and the reports reflect IntegraMed's good-faith attempts to summarize the situation at SEFC. Defendants resist IntegraMed's privilege argument, claiming it "acted with actual malice" in making statements about Dr. Patton, (Defs.' Resp. 25), but they offer no evidence to support such a finding.

Defendants' claim that IntegraMed defamed Dr. Patton by filing a complaint with the state medical board, but Defendants have not offered any evidence that such a complaint was actually filed. Under his own assertion of privilege, Dr. Patton actively resisted producing information regarding any licensing board proceeding, including who supposedly filed the complaint, when it was allegedly filed, and the substance of any such complaint. Even if a complaint had been filed, the filing would be privileged under S.C. Code Ann. § 40-1-190(A), absent proof of actual malice, which Defendants have failed to show.

### III.    Abuse of Process

In support of their abuse of process claim, Defendants allege that IntegraMed brought a meritless lawsuit in order to harass Dr. Patton, interfere with financing for his new practice, and prevent Defendants from competing with Dr. Schnorr's practice.

Citing Federal Rule of Civil Procedure 41(a), Defendants, in their Response to the instant Motion, sought to "voluntarily dismiss" this claim pursuant to a January 10, 2014 arbitration order entered in the underlying arbitration between Drs. Schnorr and Patton. (Defs.' Resp. 21). However, the current procedural posture of the case does not allow for voluntary dismissal. In the case of a counterclaim, crossclaim, or third-party claim, Defendants' voluntary dismissal of a counterclaim under Rule 41(a)(1)(A)(i) must be made prior to the service of a responsive pleading. Fed. R. Civ. P. 41(c)(1). Because Defendants did not seek dismissal of this claim prior to IntegraMed's Motion, voluntary dismissal is improper. Nevertheless, alternative grounds exist for dismissal.

A party's failure to address an issue raised in summary judgment may be considered a waiver or abandonment of the particular cause of action. *Eady v. Veolia Transp. Servs., Inc.*, 609 F. Supp. 2d 540, 560–61 (D.S.C. 2009). Presumably because they sought to voluntarily dismiss this cause of action, Defendants' Reply failed to address IntegraMed's arguments regarding this claim. As such, the Court deems Defendants' abuse of process claim abandoned.

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that Plaintiff's Motion for Summary Judgment is **GRANTED.**

**AND IT IS SO ORDERED.**

_____
PATRICK MICHAEL DUFFY
United States District Judge

**March 24, 2015**
**Charleston, SC**